### HILDRETH et al. v. McCAUL.

(Supreme Court, Appellate Division, First Department. March 7, 1902.)

TRADE-NAMES—INJUNCTION.

 M. and H. formed a copartnership in 1883. Afterwards both the original members retired, but some member of H.'s family was always represented, and the name H. appeared at all times in the firm name. After retiring from the firm, M. entered its employ, but, on its changing its location in 1901, he commenced a business of the same nature at the old situation, under the name H. M. Co., with "M., Proprietor," appearing in small letters underneath; claiming to have formed a copartnership with one of the H. family who had at one time belonged to the other firm, but who died pending action. The partnership articles were not produced. The letterheads used by M. were similar to the other firm's. He also issued a circular stating, "We have organized this new firm, and have located ourselves at the old stand which we established 15 years ago." One mercantile agency published a report stating that M. represented that H. was not his partner, but that he had bought the use of his name. Another published that M. was successor of the old firm. Some confusion in business resulted, and the affidavits showed bad faith on M.'s part. *Held*, to authorize a temporary injunction restraining the use of the name H. without the further order of the court.

Appeal from special term, New York county.

Injunction by Demie W. Hildreth and Henry Segelken against Joseph M. McCaul to restrain defendant, his agents and servants, from using the name Hildreth in his business. Order restraining defendant, his agents and servants, "from showing, displaying, or otherwise using during the pendency of this action in or upon any papers, devices, sign or signs, or otherwise, in the business conducted by defendant at Nos. 120–122 West Broadway, in the borough of Manhattan, city of New York, or elsewhere, the name of Hildreth separately or conjunctively with any other name, designation, or description," and defendant appeals. Modified.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

William Hughes, for appellant.
Wm. Victor Goldberg, for respondents.

LAUGHLIN, J. In the year 1883 appellant and Henry Phelps Hildreth formed a copartnership as manufacturers and commission merchants dealing in honey, beeswax, maple sugar, and maple sirup, and carried on business at No. 80 Hudson street, in the city of New York. In 1884 Luther S. Hildreth became a member of the firm, and

the firm name was changed to McCaul & Hildreth Bros. The firm remained the same until 1888, when appellant retired, and Henry Segelken entered the firm as a partner. The business was then continued under the firm of Hildreth Bros. & Segelken. In 1895 Henry Phelps Hildreth withdrew as a partner, and the firm name became Hildreth & Segelken. In 1898 Luther S. Hildreth died, and his wife, Demie W. Hildreth, who succeeded to his interests, became a member of the firm, and the business was, and still is, continued under the name of Hildreth & Segelken. Each successive firm succeeded to the good will of the former firm. For about 13 years prior to the 1st day of May, 1901, the firm business was conducted at Nos. 120 and 122 West Broadway. On that day the firm changed its place of business to Nos. 265 and 267 Greenwich street. The appellant, prior to his connection with the firm, had experience in this line of business, as an employé of the firm of H. K. & F. B. Thurber & Co., and after withdrawing from the firm, to which plaintiffs are successors, in 1888, he engaged in the same line of business as a broker on his own account at 198 Duane street, and so continued until 1892. After being out of the business for about four years, he resumed business in 1896 in Brooklyn, continuing it until 1899. In May, 1899, he entered the employ of plaintiffs, and continued in such employ until May 1, 1901. He claims to have entered into a copartnership with Henry Phelps Hildreth on the 11th day of May, 1901. The articles of copartnership were not produced, but by their terms, as stated by appellant, he was to furnish the entire capital, which was to be $6,000, and was to have charge of the business, and Hildreth was to share in the profits as if he had contributed the sum of $500 to the capital. Hildreth was old, in poor health, had no means, and judgments in large amounts had been entered against him, which remained unsatisfied. He had worked as a clerk for a time after leaving the firm, in 1895, but for many years had been out of business. He was defendant's brother-in-law. The defendant rented the premises 120 and 122 West Broadway for a period of 13 years shortly after the same were vacated by the plaintiffs. In place of the sign which respondents had on the building, appellant caused the sign, "Hildreth, McCaul Co.," to be erected in large letters, and the words, "Jos. M. McCaul, Prop.," in small letters underneath. He prepared letterheads quite like those used by the plaintiffs, excepting that, in place of the firm name of Hildreth & Segelken, the firm name of Hildreth, McCaul Co., in large letters, with the words, "Jos. M. McCaul, Prop.," appeared; and with that heading he caused a circular to be issued to the trade, signed, "Hildreth, McCaul Co., Jos. M. McCaul, Prop.," stating, among other things:

"We have organized this new honey, beeswax, maple sugar, and maple sirup firm, and have located ourselves at the old stand which we established fifteen years ago. We will continue to carry a full line of the different kinds of honey. * * * Our experience in this line of business for the past twenty-five years enables us to make selections and give you entire satisfaction."

It was shown by affidavit that the Bradstreet Mercantile Agency published a report of appellant's firm and business, stating that ap-

pellant represented that Henry P. Hildreth was not his partner, but that he paid a consideration for the use of his name, and that the Wilbur Mercantile Agency published a report to the effect that appellant was successor to the plaintiffs. It also appeared that confusion in business has resulted, and that orders intended for respondents were received by appellant, and that customers of plaintiffs were misled by the circular, and supposed that appellant had succeeded respondents in business. Shorty after the commencement of this action, and before the hearing on which the injunction order was granted, Henry Phelps Hildreth died. Other facts were stated in the moving affidavits tending to show that appellant was not acting in good faith in the use of the name Hildreth, which he caused to be placed before his own, as has been seen. These facts were controverted by appellant's affidavit.

We think the moving papers were sufficient to justify the inference of such bad faith in this regard, and to warrant an injunction. The order granted, however, is too broad, in that it absolutely enjoins the use of the name Hildreth by the appellant in his business. Doubtless this was owing to the death of Hildreth, it not appearing that appellant had any right to continue the use of his name. An individual has a right to use his own name in connection with his business, and in advertising the same, provided he acts in good faith, and does not deceive the public, or mislead those with whom he seeks to do business as to the identity of his business or his firm, to the injury or prejudice of others competing in the same line of business. Devlin v. Devlin, 69 N. Y. 212, 25 Am. Rep. 173; Meneely v. Meneely, 62 N. Y. 427, 20 Am. Rep. 489. The rule was well stated by Rapallo, J., in Meneely v. Meneely, supra, as follows:

"The manner of using the name is all that would be enjoined, not the simple use of it; for every man has the absolute right to use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. Where the only confusion created is that which results from the similarity of the names, the courts will not interfere. A person cannot make a trade-mark of his own name, and thus obtain a monopoly of it which will debar all other persons of the same name from using their own names in their own business."

We think he has the same right to form a copartnership with an individual of any name, and to use the name of his copartner in connection with the business or in advertising it, and he should not be enjoined from so doing.

If upon the trial the plaintiffs establish a case for permanent injunction, the court will protect the defendant's rights by confining the injunction to the manner of using the name as indicated by these authorities. So far as this appeal is concerned, we will merely modify the injunction order by adding at the end of the enjoining clause the words, "Without the further order of the court," and as thus modified it is affirmed, with $10 costs and disbursements. All concur.